UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

IN RE:

    GREAT LAKES PROPERTIES                  Case No. 14-30332-dof
    OF FENTON, LLC,                           Chapter 11 Proceeding
          Debtors.                              Hon. Daniel S. Opperman
_____/
MICHIGAN DEPARTMENT OF
ENVIRONMENTAL QUALITY,
          Plaintiff,

v.                                                      Adversary Proceeding
                                                     Case No. 14-3172-dof

RAAD ASMAR, THIKRA ASMAR,
and JIMMY ASMAR,
          Defendants.
_____/

OPINION REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DEFENDANTS' CROSS MOTIONS FOR SUMMARY JUDGMENT

INTRODUCTION

       The Michigan Department of Environmental Quality ("MDEQ") instituted this adversary proceeding against Raad, Thikra and Jimmy Asmar (individually by first name, or collectively, the "Asmars" or the "Defendants"). All three Asmars have participated, at various times and to various degrees, in the business affairs of Great Lakes Properties of Fenton, LLC ("GLPF"). Raad serves as GLPF's principal. MDEQ's primary objective in filing this adversary proceeding is to pierce GLPF's corporate veil and have the Asmars held jointly and severally liable for all of GLPF's obligations, including over $3 million in fines and penalties owed to MDEQ. MDEQ also seeks to equitably subordinate a secured claim filed by Thikra against GLPF for $840,000.

       MDEQ filed a "Motion for Summary Judgment Under F.R.C.P. 56 to Pierce the Corporate Veil, Subordinate a Claim, and for Relief under F.R.C.P. 37 and 45 and 28 U.S.C. § 1826" on March

3, 2015 ("MDEQ Motion"). Raad and Thikra filed an objection and cross motion for summary judgment on March 27, 2015 ("Raad and Thikra Motion"). Jimmy filed a separate objection and cross motion for summary judgment on March 27 ("Jimmy Motion"). MDEQ filed separate responses to the objections and cross motions on April 29, 2015.

The Defendants then each filed a reply in support of their cross motions on May 11, 2015, and MDEQ filed a final joint reply on May 20, 2015. The Court held a hearing on all three motions for summary judgment on June 24, 2015, and took the matter under advisement.

Background Facts

Raad and Thikra are husband and wife; Jimmy is one of their children. Along with other members of their family, the Asmars own and control dozens of different commercial entities. GLPF was created in 2002. Shortly after its creation, Raad purchased Fenton Heights Apartments, a 24-unit apartment complex in Fenton, Michigan, for $1.4 million, and placed title to the property in the name of GLPF.

MDEQ is a department within the executive branch of the State of Michigan charged with enforcing the Natural Resources and Environmental Protection Act, Mich. Comp. Laws §§ 324.101–324.83109 ("NREPA") and the Michigan Safe Drinking Water Act, Mich. Comp. Laws §§ 325.1001–325.1023 ("SDWA"). *See also* Mich. Comp. Laws §§ 324.99903; 325.1001a, .1002(g).

The parties have a lengthy and difficult history together, as is described in greater detail in the MDEQ Motion, filed at docket # 38. MDEQ inspected the Fenton Heights Apartments complex in February and April 2009, and discovered a number of problems with the human waste sewerage and drinking water systems. In October 2009, MDEQ and GLPF entered into a consent judgment

2

(the "Consent Judgment") in the Ingham County Circuit Court to resolve these problems (the "State Court Case"). None of the defendants in this adversary proceeding were named defendants in the State Court Case.

The Consent Judgment required GLPF to take a number of actions to bring the apartment complex into compliance with NREPA and SDWA. The Ingham County court later entered an Order Resolving Two Issues not Resolved by Prior Consent Judgment, which further required GLPF to pay $100,000 in fines and penalties, plus $12,000 in court costs, with these amounts increasing each unpaid day. It is undisputed that GLPF remained in violation of the Consent Judgment for a number of years by failing to take the remedial actions or pay the penalties and costs. The State Court Case languished in Ingham County as MDEQ made repeated attempts to enforce the Consent Judgment and collect the penalties.

On January 1, 2012, GLPF filed its first Chapter 11 petition (Case No. 12-42666). That case was jointly administered with a number of other commercial entities owned and controlled by the Asmars and other members of their family. GLPF and some of the other entities were dismissed, on their motion, by order entered September 12, 2012. The $840,000 secured claim held by Thikra, which MDEQ seeks to subordinate in this adversary proceeding, relates to a settlement GLPF entered into while Case No. 12-42666 was pending.

GLPF's first bankruptcy having been dismissed, MDEQ recommenced the State Court Case in June 2013. MDEQ filed a motion asking the Ingham County court to calculate a new total for the penalties owed by GLPF arising from the 2009 Consent Judgment and to hold GLPF in contempt of prior discovery orders. MDEQ also asked the court to hold a show cause hearing on "why [Raad]

3

Asmar and Vincent Asmar[1] should not be: (A) held in contempt as 'corporate officers' personally accountable for [GLPF's] continuing violations of multiple court orders and (B) sanctioned to personally comply with consent judgment requirements, including fines equivalent to consent judgment stipulated penalties." The record before the Court in this adversary proceeding reflects that this was MDEQ's first attempt to hold individual Asmars responsible for GLPF's obligations under the 2009 Consent Judgment. The Ingham County court held a hearing on the motion in January 2014, but nothing was resolved; all matters were instead carried over to March 13-14, 2014. In the meantime, on February 6, the Ingham County court entered an Order Awarding Consent Judgment Penalties to MDEQ in the total amount of $3,509,500.

Six days later, on February 12, 2014, GLPF filed its second petition for Chapter 11 relief, Case No. 14-30332, which is currently pending in this Court. The various orders entered by the Ingham County court form the basis for MDEQ's amended claim of $3,921,750. On October 8, 2014, MDEQ commenced this adversary proceeding; it filed an amended complaint on January 28, 2015, and a second amended complaint on May 5.

In Count I of its second amended complaint, MDEQ asks the Court to pierce the corporate veil of GLPF and hold the individual defendants liable for all of GLPF's debts and other legal obligations. In Count II, MDEQ asks the Court to equitably subordinate Thikra's $840,000 secured claim and to transfer "to the bankruptcy estate any legitimate lien securing any portion of Thikra Asmar's $840,000 claim." MDEQ also asks the Court to appoint an examiner, and order sanctions against the defendants for discovery abuses in the State Court Case and in both bankruptcy cases.

---

[1]Vincent Asmar is Raad and Thikra's son. MDEQ filed a motion to add Vincent as a fourth defendant to this adversary proceeding. However, shortly after the Court granted MDEQ's motion and allowed MDEQ to file a second amended complaint in order to name Vincent, MDEQ voluntarily dismissed Vincent from the case.

4

## APPLICABLE LAW

### Summary Judgment Standard

As stated, this matter is before the Court on MDEQ's motion for summary judgment, Raad and Thikra's cross motion for summary judgment, and Jimmy's cross motion for summary judgment.

Federal Rule of Civil Procedure 56 is made applicable in its entirety in bankruptcy proceedings by Fed. R. Bankr. P. 7056. Rule 56(a) provides that summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The moving party bears the burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). The burden then shifts to the nonmoving party once the moving party has met its burden, and the nonmoving party must then establish that a genuine issue of material fact does indeed exist. *Janda v. Riley-Meggs Indus., Inc.*, 764 F. Supp. 1223, 1227 (E.D. Mich. 1991).

## ANALYSIS

### I. Piercing the Corporate Veil

MDEQ seeks broad relief against the individual Defendants in Count I of its second amended complaint: it asks this Court to hold Defendants jointly and severally liable "for all legal obligations of the Debtor, whenever created or to be created," and to find that "'the assets and operations of [GLPF] are, as a matter of law, the assets and operations of the [Defendants].'" *See* MDEQ Motion at 43, dkt. #38 (quoting *Simon v. Brentwood Tavern, LLC (In re Brentwood Tavern)*, 329 B.R. 802 (Bankr. E.D. Mich. 2005)). MDEQ also asks the Court to declare that "all actions taken in the name of the Debtor . . . are actions taken by Defendants, personally, jointly and severally," and that the

current GLPF bankruptcy petition was "filed in the name of Defendant Raad Asmar," "along with all such subsequent filings."

MDEQ attached a substantial number of documents to its Motion for Summary Judgment, including bank account statements from GLPF and the Asmars, checks written by the Asmars for credit lines held by GLPF, tax records, and excerpts of interrogatories from the State Court Case. MDEQ argues that these and other relevant documents undisputedly show that GLPF "was used from its 2002 creation as a mere instrumentality and alter-ego of Defendants; . . . [and that GLPF] was used to commit fraud and other wrongs that caused unjust injury and loss to Plaintiff." Finally, should the Court find the evidence insufficient, MDEQ asks the Court to apply Rules 37 and 45 of the Federal Rules of Civil Procedure, which are applicable in this bankruptcy proceeding under Bankruptcy Rules 7056 and 9016, respectively, to fill in any gaps. Defendants object to MDEQ's arguments on a number of grounds.

The Court declines to rule on whether GLPF's corporate veil should be pierced. The Court concludes that its authority to hold the non-debtor Defendants liable in their individual capacities "for all legal obligations of [GLPF], whether created or to be created," is at best questionable, even with the parties' express consent. *See* 28 U.S.C. §§ 1334(b), 157(c)(1) and (2); E.D. Mich. LR 83.50(a)(3)(A); *see also generally Wellness Int'l v. Sharif*, --- U.S. ---, 135 S. Ct. 1932 (2015). This is particularly true when the state court clearly does have jurisdiction over MDEQ's claim; indeed, it appears that MDEQ was in the process of seeking personal liability against Raad and Vincent Asmar in the Ingham County Circuit Court when GLPF filed for Chapter 11 relief in February 2014 (Case No. 14-30332).

The Court therefore dismisses MDEQ's claim for piercing GLPF's corporate veil, but without prejudice to MDEQ's right to assert the claim against the Defendants in state court.[2]

## II. Equitable Subordination

The Court now turns to MDEQ's request for equitable subordination of Thikra's $840,000 claim.[3] Her claim is secured by the Fenton Heights Apartment complex, GLPF's only valuable asset. In seeking to equitably subordinate Thikra's claim, MDEQ relies on section 510(c) of the Bankruptcy Code, which provides in pertinent part that, "after notice and a hearing, the court may – (1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest . . . ." 11 U.S.C. § 510(c).

The Court finds that it does have jurisdiction over a request for equitable subordination pursuant to 28 U.S.C. §§ 1334, 157(a) and E.D. Mich. LR 83.50. Equitable subordination is a core matter under 28 U.S.C. § 157(b)(2)(K) (determination of the validity, extent, or priority of liens).

The issues in this adversary proceeding pertaining to MDEQ's efforts to subordinate Thikra's claim arise from Title 11 of the United States Code, and do not involve any matter which limits this Court's jurisdiction as detailed by the United States Supreme Court in *Stern v. Marshall*, --- U.S.

---

[2]The Court therefore declines to make any findings under Rules 37 and 45 of the Federal Rules of Civil Procedure related to the piercing of GLPF's corporate veil.

On a related note, the Court also will not consider MDEQ's argument that the Court has the "option" to order substantive consolidation of the financial estates of GLPF and the Asmars instead of piercing GLPF's corporate veil, because MDEQ raises that argument for the first time in its Joint Reply, at docket # 89. *See Paul v. Henri-Liné Machine Tools, Inc.*, No. 10-10932, 2012 WL 6642494, at *6 (E.D. Mich. Dec. 20, 2012) ("A reply is not the proper place to raise an argument for the first time." (citing cases)).

[3]The Court acknowledges that in its Motion and accompanying brief, MDEQ asks the court to equitably subordinate *or* disallow Thikra's claim. However, MDEQ cites only §§ 510(c) and 1129(b)(1) of the Bankruptcy Code. The Court therefore limits its analysis to whether the claim should be equitably subordinated and not whether it should be disallowed.

---, 131 S. Ct. 2594, 2608, 180 L. Ed. 2d 475 (2011), and later in *Executive Benefits Ins. Agency v. Arkison*, --- U.S. ---, 134 S. Ct. 2165, 189 L. Ed. 2d 83 (2014). *See also Wellness Int'l Network, Ltd. v. Sharif*, --- U.S. ---, 135 S. Ct. 1932 (2015); *Waldman v. Stone*, 698 F.3d 910 (6th Cir. 2012).

Additional Background Facts

A. The 2012 Settlement Agreement with Level One Bank

As mentioned briefly above, Thikra's claim relates to a settlement entered into on May 11, 2012, in connection with GLPF's first, jointly-administered, Chapter 11 bankruptcy (Case No. 12-42666). The settlement involved debts owed to Level One Bank (formerly Paramount Bank) by GLPF, two other Asmar-related entities referred to as NCI and Global 14,[4] and Raad and Thikra individually (the "Level One Settlement" or the "Settlement"). Each of these debts was in default at the time of the Settlement. The amounts of the debts settled were:

1. $2,536,301.68, owed by GLPF
2. $1,353,710.06, owed by Global 14
3. $483,943.61, owed by NCI
4. $198,942.10, owed by the Asmars personally.[5]

Each of these debts was guaranteed by another party to the Settlement, and each was secured by mortgages and assignments of rents on various properties owned by NCI, Global 14, and GLPF. In particular, GLPF's approximately $2.5 million debt was secured by a mortgage and assignment of rents on the Fenton Heights Apartments complex.

---

[4]The two other Asmar-related entities are Northwestern Commercial Investments, LLC ("NCI"), and Global Commercial Investments Gratiot & 14, LLC ("Global 14"). A fourth Asmar-related entity, referred to as GCI S&C, was also a party the Settlement, as was the Raad Asmar Revocable Trust and the Thikra Asmar Revocable Trust, but these entities did not have debts resolved in the Settlement.

[5]These are the amounts listed on pages 1-3 of the Level One Settlement agreement. However, page 5 provides that, "[r]egardless of whether Level One receives the Settlement Amount or if there are any other defaults under this Agreement, . . . Obligors acknowledge and agree that Level One has an allowed claim against: (i) NCI in the amount of at least $4,676,654.06 . . . (ii) GCI S&C in the amount of at least $2,632,237.54 . . . (iii) [Global 14] in the amount of at least $1,355,417.06 . . . (iv) [GLPF] in the amount of $2,632,237.54" all as of April 13, 2012.

The terms of the Level One Settlement required that "the Asmars shall make the following payments to Level One in immediately available funds . . . : (i) $10,000 concurrently with the execution of this Agreement; and (ii) $815,000 by June 15, 2012." In exchange, and subject to certain other conditions, Level One agreed to withdraw its proofs of claim filed in the parties' pending bankruptcies, and stipulate to a dismissal of actions pending against the parties in Oakland County.

On June 15, 2012, the parties executed an "Amendment to Settlement Agreement." Under the Amendment, the Asmars, individually, agreed to pay $100,000 that day, with $85,000.00 to be applied against the $815,000.00 balance, for a total of $840,000. The parties agreed that the Asmars would pay the remaining $730,000.00 by September 13, 2012.

B.   How the Settlement was Paid

Berkley Venture, LLC, and Asmar Capital, LLC, both Asmar-related entities which were not parties to the Level One Settlement, drafted checks to Level One Bank in the Summer of 2012, totaling $840,000. Thikra then executed demand promissory notes in favor of these entities totaling $840,000. Subsequently, on September 18, 2012, Raad, purporting to act on behalf of GLPF, executed two demand promissory notes in favor of Thikra totaling $840,000. That same day, Raad (again purporting to act on GLPF's behalf) executed corresponding mortgage/security agreements and assignments of rents and leases on the Fenton Heights Apartments complex in favor of Thikra.

Discussion

The Sixth Circuit has adopted a three-part test to determine when a claim may be equitably subordinated:

> (1) the claimant must have engaged in some type of inequitable conduct; (2) the misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant; and (3) equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Code.

*Bayer Corp. v. MascoTech, Inc.* (*In re AutoStyle Plastics, Inc.*), 269 F.3d 726, 744 (6th Cir. 2001).

"Satisfaction of this three-part standard does not mean that a court is *required* to equitably subordinate a claim, but rather that the court is *permitted* to take such action." *Id.* (citing *In re Octagon Roofing*, 157 B.R. 852, 857 (N.D. Ill. 1993)). The bankruptcy court's authority to take such action, "'emanates from the . . . court's power to ignore the form of a transaction and give effect to its substance.'" *Id.* at 747 (quoting *Fabricators, Inc. v. Technical Fabricators, Inc.* (*In re Fabricators, Inc.*), 926 F.2d 1458, 1469 (5th Cir. 1991)). Where, as here, the claimant is an insider, the Court is to apply this test with rigorous scrutiny, and courts agree that "'less egregious conduct may support equitable subordination'" of an insider's claim versus a non-insider's claim. *Id*. at 745 (quoting *Summit Coffee Co. v. Herby's Foods, Inc.* (*In re Herby's Foods, Inc.*), 2 F.3d 128, 131 (5th Cir. 1993)).

Nevertheless, "'the mere fact of an insider relationship is insufficient to warrant subordination.'" *Id.* (citing *Blasbalg v. Tarro* (*In re Hyperion Enter., Inc.*), 158 B.R. 555, 563 (D.R.I. 1993)). "In order to equitably subordinate a creditor's claim, the creditor-insider must actually use its power to control to its advantage or to other creditors' detriment." *Id*. This is because "equitable subordination is an unusual remedy which should be applied in limited circumstances." *Id*.

The Asmars contend that MDEQ failed to provide any evidence of inequitable conduct. They further contend that their actions were in reality a windfall for GLPF's creditors, because their actions reduced the approximately $2.5 million in secured debt held by Level One Bank down to $840,000 in secured debt held by Thikra.

The Court disagrees. Relying on the documentary evidence attached to the parties' pleadings, the authenticity of which is not disputed, and applying the more exacting degree of scrutiny required for insider claims, the Court concludes that Thikra and Raad engaged in inequitable conduct which conferred an unfair benefit on Thikra, and that subordination of Thikra's

10

claim is not inconsistent with the Bankruptcy Code.

Thikra's claim in GLPF's current Chapter 11 bankruptcy (Case No. 14-30332) is premised on the fact that she paid the entire Level One Settlement on behalf of GLPF. But nothing in the language of the Level One Settlement agreement made GLPF responsible for the entire $840,000. Indeed, the plain language of the Level One Settlement agreement and the amendments thereto appears to have required *the Asmars* to pay the $840,000. More importantly, GLPF's schedules from the prior bankruptcy (Case No. 12-42666) which were filed in February 2012, list the value of the Fenton Heights Apartments complex at $100,000. Yet, a mere seven months later, GLPF, acting through Raad, gave Thikra a mortgage on that property in the amount of $840,000, more than eight times the value it assigned to the property in its bankruptcy schedules. This occurred at a time when GLPF was seeking relief from the 2009 Consent Judgment penalties, in Ingham County, based on its inability to pay. *See, e.g.*, *In re AutoStyle Plastics, Inc.*, 269 F.3d at 747 (quoting *Official Comm. of Unsecured Creditors v. B.T. Commercial Corp.* (*In re Tenn. Valley Steel Corp.*), 186 B.R. 919, 923 n.8 (Bankr. E.D. Tenn. 1995)) (Provided there is other evidence of inequitable conduct, "'if an insider makes a loan to an undercapitalized corporation, the combination of undercapitalization and the insider loan may allow the bankruptcy court . . . to equitably subordinate the loan to the claims of other creditors.'").

The cases Raad and Thikra cite in their briefs on this point do not compel a different result. In *In re Energy Conversion Devices, Inc.*, the court concluded that there was no inequitable conduct, because the argument was "based only on a claimed breach *by the Debtor* . . . of its fiduciary duty to shareholders," and not on any inequitable conduct by the creditor against whom equitable subordination was sought. 528 B.R. 697, 706-07 (Bankr. E.D. Mich. Jan. 30, 2015). In *TTOD Liquidation, Inc. v. Jin Lim* (*In re Dott Acquisition, LLC*), the Chapter 7 trustee sought to equitably subordinate a creditor's claim. 520 B.R. 588, 617-18 (Bankr. E.D. Mich. 2014). The court rejected

11

equitable subordination, reasoning that:

> [A]ll of the Trustee's allegations of inequitable conduct are built upon the fundamental premise that Dott Acquisition is the true owner of the Real Property, Equipment, Inventory and Accounts. . . . In asserting that TTOD somehow "improperly seized" the Real Property and the Equipment, the Trustee seems blind to the fact that both the Circuit Courts and each of the courts in the Eviction Proceedings have already adjudicated that Dott Acquisition has no rights to the Real Property and the Equipment. . . .
>
> The Trustee's arguments fare no better with respect to the Accounts and Inventory.

*Id.* at 617.[6]

The facts here, detailed above, clearly contrast with the facts of these cases. Here, it appears that the money Thikra "loaned" to GLPF was used to pay off a debt owed by Thikra and Raad (or possibly owed by Thikra, Raad, and the other Asmar-related entities who were parties to the Level One Settlement). The Court concludes that this conduct, especially from an insider, constitutes inequitable conduct, and that it was clearly done to benefit Thikra and Raad, to the detriment of GLPF's creditors. Thus, the Court concludes that it may, and should, equitably subordinate Thikra's claim, consistent with the provisions of the Bankruptcy Code. *See In re AutoStyle Plastics, Inc.*, 269 F.3d at 744 (elements of equitable subordination).

However, the Court further concludes that the record, both factually and in terms of the parties' legal arguments, is insufficient to establish the extent to which Thikra's claim should be subordinated. *See id*. at 749 (When analyzing whether to equitably subordinate a claim, the court reviews the record to determine "whether a legitimate creditor engaged in inequitable conduct, in

---

[6]Raad and Thikra also cite *United States v. Noland*, 517 U.S. 535, 535-36 (1996) (holding that a bankruptcy court may not equitably subordinate tax penalty claims "on a categorical basis in derogation of Congress' scheme of priorities"), and *First National Bank of Barnesville v. Rafoth* (*In re Baker & Getty*), 974 F.2d 712, 717-20 (6th Cir. 1992) (affirming district court's decision not to subordinate bank's claim, where bank was a non-insider) in support of their argument against equitable subordination. These cases likewise do not change the Court's analysis.

which case the remedy is subordination of the creditor's claim 'to that of another creditor *only to the extent necessary* to offset injury or damage suffered by the creditor in whose favor the equitable subordination doctrine may be effective.'"). By way of example, the following inquiries may be useful: 1) What amount of the Level One Settlement, if any amount, was GLPF actually responsible to pay? 2) To what extent was GLPF undercapitalized at the time it "borrowed" $840,000 from Thikra to pay the entire Level One Settlement amount? 3) What was the value of the Fenton Heights Apartment complex at that time? 4) To what extent was MDEQ or any other creditor actually harmed?

Counsel for both sides obviously may have further arguments and questions regarding the extent to which Thikra's claim should be subordinated, and may argue that these questions are not relevant to the Court's analysis, or that these questions should be reserved for the claims objection process. Simply stated, the record is fairly sparse on the equitable subordination issues; the parties were much more focused on issues relating to piercing GLPF's corporate veil.

Finally, for clarity's sake, the Court notes that MDEQ's equitable subordination arguments do not concern Jimmy. Therefore, to the extent MDEQ asserts equitable subordination against Jimmy, such claim is dismissed with prejudice.

### III. Other Relief

MDEQ additionally asks this Court to appoint "an examiner, as needed, to review all necessary financial and other records," and to prohibit Defendants from relying on evidence they failed to produce in the prior bankruptcy case (Case No. 12-42666) and in the State Court Case. MDEQ also asks the Court to require Defendants to pay its court costs and attorney fees. Defendants each ask the Court to hold MDEQ responsible for their court costs and attorney fees.

The Court finds it is inappropriate to make a determination regarding the appointment of an examiner at this time. MDEQ does not make even a passing reference to the standards set forth in

section 1104 of the Bankruptcy Code for the appointment of an examiner. 11 U.S.C. § 1104. The Court therefore denies this request without prejudice to MDEQ's rights to seek the appointment of an examiner in a different context, provided it can provide factual and legal support for its request.

The Court denies MDEQ's request for discovery sanctions against Defendants, as it is undisputed that no discovery requests or subpoenas have been served in this adversary proceeding. *See* Fed. R. Civ. P. 37, 45; Fed. R. Bankr. P. 7056, 9016.

Finally, based on the circumstances of the case, the Court concludes each party should be held responsible for paying its own attorney fees and court costs.

## CONCLUSION

For the reasons stated in this Opinion, the Court hereby dismisses Count I of MDEQ's second amended complaint, which seeks to pierce GLPF's corporate veil and hold the Defendants liable for GLPF's financial and other legal obligations. This dismissal is without prejudice to MDEQ's rights to assert that claim in state court, in the Ingham County Circuit Court or any other appropriate venue.

Regarding Count II of the second amended complaint, the Court hereby grants MDEQ's Motion for Summary Judgment on the issue of whether Thikra Asmar's secured claim should be equitably subordinated pursuant to 11 U.S.C. § 510(c), but finds there are disputed facts and unresolved issues regarding the extent to which the claim should be subordinated. However, because MDEQ has asserted no plausible grounds for Jimmy Asmar's continued involvement in the case to resolve the equitable subordination issues, the Court hereby dismisses Jimmy Asmar from Count II, with prejudice.

Regarding additional relief, MDEQ's request for the appointment of an examiner, and for sanctions related to alleged discovery abuses committed by Defendants, are hereby denied without prejudice to MDEQ's rights to seek those forms of relief in an appropriate procedural context, with

factual and legal support. All parties are ordered to pay their own attorney fees and court costs.

Counsel for MDEQ is directed to prepare and submit an order consistent with this Opinion and consistent with the procedural rules of this Court.

**Signed on August 03, 2015**

> **/s/ Daniel S. Opperman**
> **Daniel S. Opperman**
> **United States Bankruptcy Judge**