UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION-FLINT

IN RE:

GREAT LAKES PROPERTIES
OF FENTON, LLC,

Chapter 7
Case No. 14-3332-dof
Honorable Daniel S. Opperman

Debtors,
_____/

MICHIGAN DEPARTMENT OF
ENVIRONMENTAL QUALITY,

Plaintiff,

v.

**Adv. Proc. Case No. 14-3172-dof**
**Honorable Daniel S. Opperman**

RAAD ASMAR, THIKRA ASMAR,
And JIMMY ASMAR

Defendants.
_____/

OPINION REGARDING ENTRY OF SETTLEMENT ORDER DISPOSING OF
<u>ADVERSARY PROCEEDING</u>

<u>Findings of Fact</u>

The Plaintiff filed this Adversary Proceeding alleging that Defendants used Debtor as their alter ego and requesting this Court pierce the corporate veil and hold Defendants liable for Debtor's obligations to Plaintiff. The majority of the factual background relevant to this Opinion is contained in the Court's Opinion Regarding Plaintiff's Motion for Summary Judgment and Defendants' Cross Motions for Summary Judgment, found at Docket Number 96. The Court incorporates the factual findings and background information contained in that Opinion. The relevant facts occurring subsequent to that Opinion are added here.

1

On April 15, 2016, this Court entered an order in the underlying bankruptcy case requiring the parties to attend mediation. The parties mediated for nearly two full days in July 2016. The result was a three-page, handwritten settlement agreement, dated July 12, 2016. That agreement was signed by Plaintiff's counsel, counsel for Defendants Raad and Thikra Asmar, Debtor's counsel, and Defendant Raad Asmar personally.[1] On July 14, 2016, the mediator filed a certificate confirming that the parties had reached a settlement agreement.

In the months following mediation, the parties struggled to agree on an order confirming their settlement and by late 2016 it became clear the parties would not agree on such an order. Accordingly, the Court ordered the parties to submit briefs stating their position on the settlement agreement and proposing an order confirming it. The Court has reviewed all relevant pleadings and briefs, as well as any accompanying exhibits.

Discussion

**A.     The Settlement Agreement is a Binding Contract Between the Parties**

The Court is in a unique position in this case. By all accounts, the parties reached agreement on all substantial issues pending before this Court following a lengthy mediation. Thus, the real questions now before the Court are whether the handwritten agreement purporting to memorialize that agreement a) constitutes a binding and enforceable settlement contract and b) contains terms clear enough to be recited and enforced. The Court answers both in the affirmative.[2]

An agreement to settle a pending case is a contract subject to the legal principles of contract interpretation and construction. *Kloian v. Domino's Pizza, LLC*, 273 Mich. App. 449,

---

[1] Neither Jimmy Asmar nor anyone on his behalf signed the agreement. The Court addresses this omission below.

[2] Earlier in this litigation Plaintiff sought contempt against Defendants, but those requests have since been withdrawn.

452 (2006). Thus, a settlement agreement requires mutual assent, or meeting of the minds, on all essential terms. *Id*. When parties, by offer and acceptance, reach an agreement on essential terms, an enforceable settlement agreement exists. *Id*. at 452-53. Whether a meeting of the minds has occurred requires a court to apply an objective standard, considering the express words and visible acts and not subjective states of mind. *Id*. at 454. Once parties reach a settlement agreement, a party cannot disavow it merely because he has a "change of heart." *Metropolitan Life Ins. Co. v. Goolsby*, 165 Mich. App. 126, 128 (1987).

In this case, highly skilled and competent attorneys represented sophisticated contracting parties. All of these parties took appropriate and necessary steps to protect themselves, so the Court should not intervene to recast the agreement. Instead, the Court must enforce an unambiguous contract according to their terms and cannot enter an order that deviates in any material respect from the parties' agreement. *Kloian, supra*, at 461. Here, the evidence before the Court is that the parties attended a mediation lasting nearly two full days. Each party upon whom the agreement imposes some obligation was present with legal counsel, and each party upon whom the settlement agreement imposed some obligation agreed to the terms of the settlement agreement. The parties entered that agreement freely, voluntarily, and not as a result of any undue influence. It reflects the parties' mutual assent to terms essential to settle this matter. Thus, the parties had a meeting of the minds that resulted in a settlement agreement containing terms, and those terms were unambiguous and enforceable.

Therefore, the Court finds that the settlement agreement the parties agreed to and signed on July 12, 2016 was a valid, enforceable contract. For the reasons discussed in the next section, the terms of that settlement remain in full force and effect and are binding on the parties. Those terms, such as the Court finds them, are discussed in detail below.

**B.     The Parties Have Not Agreed to Modify or Rescind the Settlement Agreement**

The parties' lengthy battle over entry of an order regarding the settlement agreement included unsuccessful efforts by each party to undo or amend portions of their agreed-upon settlement.  In the months following mediation, each side apparently grew unhappy with the certain elements of the resolution they negotiated. Plaintiff complained about what it saw as Defendants continually trying to change the agreement unilaterally.  However, the evidence demonstrates that Plaintiff itself sought an order that ignored plain language contained in the original settlement agreement.  For example, Plaintiff (through counsel) argued that the settlement agreement did not resolve all claims alleged or "that could have been alleged," contradicting Paragraph 8 of the handwritten agreement, which clearly stated otherwise.

Plaintiff similarly sought an order excluding the language of Paragraphs 9 and 10 of the settlement agreement. Thus, Plaintiff tried multiple times to obtain entry an order that clearly ignored substantive terms of the settlement to which they agreed at mediation, undermining its argument that Defendants bore the blame for the delays in getting the parties' agreement confirmed by the Court.  Plaintiff also argues that emails from one of Defendant's counsel demonstrated clear agreement with Plaintiff's proposed Stipulation and Order on settlement.  According to Plaintiff, then, the Court must find that the parties agreed to Plaintiff's proposed Stipulation and Order.  The Court disagrees for two reasons.  First, Plaintiff's Stipulation and Order was not faithful to the binding settlement agreement the parties reached after two days of mediation and negotiation.

Second, the emails upon which Plaintiff relies for its argument were surrounded by other exchanges indicating that Defendants did not accept Plaintiff's proposal.  For example, Plaintiff

references a July 27, 2016 email in which defense counsel stated "Attached is what I understand to be the final, agreed upon version of the proposed stipulation and Order…" However, in that very same email, defense counsel asked for a substantive addition to the order. The following day, defense counsel emailed Plaintiff's attorney asking "Do you know when we can expect to have the MDEQ list of actions items…so that we may present the Stipulation & Order for entry?" If Defendants agreed the Stipulation and Order was complete and sufficiently reflected the parties' agreement, these questions would be irrelevant. The Court finds that these exchanges reflect a lack of agreement to the terms of Plaintiff's Stipulation and Order.

Defendants, on the other hand, claim they were arguing over merely the form of the requested order, not its substance, and complained that Plaintiff sought to impose on them requirements for permitting and compliance that were onerous and unreasonable. But the emails exchanged between counsels clearly reflect Defendants' efforts to adjust certain substantive terms of the settlement agreement. One example exists in an email from defense counsel Sean Walsh on July 27, 2016. There, Attorney Walsh said he wanted to include a provision in the settlement order that required Plaintiff to file a satisfaction of the Consent Judgment in the state court case. That term was not part of the parties' original settlement agreement and would have changed that agreement in a substantive way. Defendants, through counsel, later requested that Plaintiff drop altogether another substantive provision of the settlement agreement—the finding that the corporate veil should be pierced. Clearly then, Defendants did seek substantive changes to the agreement in the months following it. Finally, if Defendants feared Plaintiff might impose onerous requirements upon them, they should have addressed that concern in more detail in the agreement itself.

Despite each side's unilateral efforts to undo or change portions of their settlement agreement, the parties never reached a meeting of the mind regarding those efforts. There was no mutual assent to the modifications either party sought, leaving the original agreement unchanged. Accordingly, the Court finds that the parties did not agree either to rescind the settlement agreement or to modify its terms. As a result, the terms of the original settlement agreement remain in full force and effect and are binding on the parties.

**C.     The Terms of the Settlement Agreement are Unambiguous and Enforceable**

The vast majority of the body of the settlement agreement is clear, but a few words are barely legible. In total, the settlement agreement contains very little room for interpretation or argument. In light of the parties' representation in the briefs contained at Docket Numbers 170 and 172, that they have resolved the matter of the task list and the issue of pending permits, the Court finds the remainder of the settlement agreement is clear and resolves all issues pending in this case. This Court is left to memorialize that agreement in an enforceable order.

The Court finds that the settlement agreement contained the following terms, which terms include a stipulation granting summary judgment against Raad Asmar and dismissing with prejudice all claims against Jimmy and Thikra Asmar. These terms, as well as the others below, bind the parties and the Court will restate them in its Order following this Opinion. That Order will read in part:

WHEREBY, the Court makes the following findings regarding the terms of the settlement agreement, which terms are binding on the parties[3]:

1.  The Court grants Summary Judgment in favor of Plaintiff and against Defendant Raad Asmar on Count I of the Second Amended Complaint, which requested the Court pierce Debtor's corporate veil. The Court finds that piercing the corporate

---

[3] The Court has done its best to include the terms verbatim as they appear in the settlement agreement, making adjustments only for readability or so they make sense in the context of a judicial opinion.

veil is appropriate here, solely in favor of Plaintiff and not for any other purpose. Accordingly, Defendant Raad Asmar is personally liable for the legal obligations Debtor owes to Plaintiff in the amount(s) set forth in this Opinion and the Order accompanying it.

2. Defendant Raad Asmar is personally liable for and shall pay to Plaintiff the sum of $500,000.00. He shall make said payment within 180 days of entry of the Order accompanying this Opinion.

3. If Defendant Raad Asmar does not pay the required $500,000.00 within 180 days of entry of the Order accompanying this Opinion, he shall become and thereafter will be liable for, and will be ordered to pay to Plaintiff, the total sum of $3,000,000.00, less any amounts already paid pursuant to this settlement.

4. All claims alleged against Defendants Jimmy Asmar and Thikra Asmar in this Adversary Proceeding are hereby dismissed with prejudice and without cost.

5. Plaintiff shall promptly issue all requisite pending groundwater and other permits to Debtor upon completion of the items appearing on Exhibit A to the settlement memorandum.[4]

6. Within 60 days of entry of the Order accompanying this Opinion, Plaintiff shall withdraw its proof of claim in the Debtor's Chapter 11 case, as well as its objections to the Debtor's proposed Section 363 sale and Chapter 11 plan.

7. Defendant Raad Asmar represents, warrants, and agrees that (a) he will not file a voluntary bankruptcy petition during the 180 day period immediately following entry of the Order accompanying this Opinion, and agrees that doing so will constitute an act of default under this agreement; and (b) a challenge by Defendant Raad Asmar to this Opinion or the Order accompanying it shall constitute a default by said Defendant. A default under this paragraph will trigger payment of $3,000,000.00 as discussed in paragraph 3 above.

8. This Opinion and the Order accompanying it, per the settlement from which they derive, resolve all claims that were alleged or that could have been alleged by Plaintiff in this Adversary Proceeding. This Opinion and the Order accompanying it conclude this case.

9. All payments made pursuant to this Opinion and the Order accompanying it are made to resolve all of Plaintiff's claims for enforcement costs, attorney fees, and penalties.

---

[4] As was noted above, this provision is moot, as the parties have performed their obligations under this term. As the obligations under this term are complete, there will be no Exhibit or other related attachment to this Opinion or its accompanying Order. The Court restates this term here merely to remain consistent with the settlement agreement.

10. Plaintiff represents, warrants, and agrees that its attorneys' fees incurred in enforcing the Consent Judgment exceed $500,000.00.

The immediately preceding ten paragraphs represent the unambiguous terms to which the parties agreed at mediation and which they memorialized in the signed settlement agreement. They also represent the totality of the agreement between the parties. If any party believes the agreement does not address an issue of importance arising out of or related to this Adversary Proceeding, the complaining party must deal with the consequences of executing a settlement agreement without addressing that issue. The Court makes no comment regarding the impact that the settlement agreement, this Opinion, or the Order accompanying this Opinion will have on any other matters pending or possible between the parties.

**D.     Jimmy Asmar**

Although the Settlement agreement provides for Jimmy Asmar to be dismissed with prejudice and without imposition of costs, neither Jimmy nor his counsel signed the agreement. The Court writes here simply to note that this is of no concern as the settlement requires nothing affirmative of Jimmy and the obligation to dismiss him rests upon Plaintiff, which did sign the agreement, via counsel. However, to avoid any confusion, the Court's Order accompanying this Opinion will dismiss Jimmy Asmar with prejudice and without costs.

The Court is entering an Order contemporaneous to and consistent with this Opinion.

**Not for Publication**

.

```
Signed on June 07, 2017
```

```
                                    /s/ Daniel S. Opperman
                              Daniel S. Opperman
                              United States Bankruptcy Judge
```